**IT IS ORDERED as set forth below:**



**Date: September 30, 2019**

Susan D. Barrett

United States Bankruptcy Judge
Southern District of Georgia

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE:<br><br>DOMINICO CARTRALL SIMMONS,<br><br>Debtor | ) | Chapter 13 Case<br>Number 14-10757 |
| IN RE:<br><br>WILBERT WAYNE SMITH,<br><br>Debtor | ) | Chapter 13 Case<br>Number 14-10056 |

**ORDER AND OPINION**

This order addresses the Chapter 13 Trustee's ("Trustee") Motions to Dismiss Pursuant to 11 U.S.C. §1307(c)(6) filed in the Wilbert Wayne Smith ("Smith") and the Dominico Cartrall Simmons ("Simmons") cases. In Smith, the Trustee also seeks denial of the

discharge for the failure to make post-petition direct mortgage payments.[1] Collectively, Smith and Simmons are referred to as "Debtors." Debtors argue "cause" does not exist to dismiss their cases. This issue is a core proceeding under 28 U.S.C. §157(b)(2)(A), (J), and (O) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, the Trustee's Motions to Dismiss and the Motion to Deny Discharge are denied in part, with the Clerk directed to set a hearing on the good faith arguments.

## FINDINGS OF FACT

The Trustee and Debtors have stipulated to the following facts:

**Smith**

1. [Smith]'s chapter 13 petition and his Chapter 13 Plan and Motion ("Plan") (ECF No. 2) were filed January 10, 2014.

2. [Smith]'s Plan, as modified by the Trustee's Motion to Confirm, as Amended (ECF No. 25) provided for monthly payments of $543.00 to the Trustee, with a minimum commitment period of 36 months and a 0 percent dividend to general unsecured creditors.

3. The Plan further provided in paragraph 2(d) that post-petition payments of $842.00 owed to "Chase" would be paid "direct to creditor according to the contract." The Plan did not provide for payment of a prepetition arrearage to Chase.

---

[1] At the time of issuance of this order, only Smith has completed the procedural requirements for discharge.

4. On April 9, 2014, an Order Confirming Plan ("Confirmation Order") (ECF No. 30) was entered. The Order requires: "As soon as practical following confirmation, the Trustee shall file a report of all claims filed in the case and the Trustee's proposed treatment of such claim under the plan as confirmed." (Confirmation Order ¶ 3).

5. On Schedule J to the petition, [Smith] listed an expense of $843.00 for "rental or home ownership expense."

6. Subsequent to confirmation, on May 27, 2014, The Bank of New York Mellon, f/k/a The Bank of New York, as Successor-in-Interest to JPMorgan Chase Bank, N.A. ("BONY") timely filed Proof of Claim No. 8 for $97,289.86, secured by Debtor's residence located at 4303 White Pines Court, Hephzibah, Georgia 30815. The claim also showed an arrearage of $8,392.33.

7. On August 13, 2014, the Trustee filed a motion to increase payments to fund the prepetition arrearage (ECF No. 32).

8. On August 13, 2014, the Trustee also filed the report (ECF No. 31) ("Trustee's Report") required by the Confirmation Order providing that the Trustee would make disbursements to BONY on the arrears in the amount of $8,392.33 pursuant to Proof of Claim No. 8, but that no distribution would be made by Trustee on the ongoing mortgage payments to BONY which are referenced as "DIRECT PAY CLM FILED AS SECURED (Y)."

9. On October 9, 2014, [Smith] filed an objection to BONY's proof of claim (ECF No. 37). The objection was subsequently withdrawn (ECF No. 52), and an order increasing plan payments to $745.00 was entered on November 20, 2014 (ECF No. 52). The purpose of the increase was to fund the prepetition arrearage claim.

AO 72A
(Rev. 8/82)

10. [Smith] completed his plan payments and the Trustee paid the prepetition arrearage to BONY in the amount of $8,392.33.

11. On November 1, 2018, the Trustee filed a Notice of Completion of Plan Payments and Notice of Final Cure Payment (ECF No. 76).

12. On November 21, 2018, BONY filed a Response to Notice of Final Cure Payment ("BONY Response") as a supplement to Proof of Claim No. 8. The BONY Response states that [Smith] is delinquent on his post-petition mortgage payments in the amount of $47,334.88.

13. [Smith]'s budget throughout this case included funds for the monthly payments on his mortgage. [Smith] has not provided an explanation of why the mortgage payments were not made and how the $47,334.88 set aside for payment of his mortgage was spent.

14. Until the filing of the BONY Response, the Trustee was unaware of [Smith]'s significant default under the terms of his confirmed Plan.

Dckt. No. 88, Joint Stipulation of Facts.

**Simmons**

1. [Simmons'] chapter 13 petition was filed April 30, 2014.

2. [Simmons'] second amended plan before confirmation (ECF No. 27) ("Amended Plan") was filed August 6, 2014, providing for monthly payments of $294.00, a commitment period of 60 months and a 0 percent dividend to general unsecured creditors.

3. [Simmons'] Amended Plan further provided in paragraph 2(d) that post-petition payments of $1,725 owed to U.S. Bank Home Mortgage ("U.S. Bank") would be paid "direct to creditor according

to the contract." The Plan did not provide for payment of a prepetition arrearage.

4. As further amended by the Trustee's Motion to Confirm Plan, As Amended (ECF No. 36) increasing plan payments to $310.00, the Amended Plan was confirmed on or about November 13, 2014 (ECF No. 38).

5. On Schedule J to the petition, [Simmons] listed an expense of $1,725.00 for "rental or home ownership expense."

6. On August 13, 2014, U.S. Bank timely filed Proof of Claim No. 8 for $228,506.29, secured by [Simmons'] residence located at 4036 Lakewood Drive, Grovetown, Georgia 30813. The claim also showed a small arrearage of $472.08 due to an alleged escrow shortage.

7. On December 9, 2014, U.S. Bank filed a motion for relief from stay (ECF No. 42) asserting its principal balance had increased to $236,269.00 and that Debtor was in default for post-petition payments from September 1, 2014 through December 1, 2014. On March 5, 2015, U.S. Bank withdrew the motion for relief (*See* ECF No. 56).

8. By letter to the Trustee dated September 23, 2015, [Simmons] requested approval of a loan modification with U.S. Bank.

9. On September 28, 2015, the Trustee filed an Approval of Application to Modify Mortgage (ECF No. 62) in which U.S. Bank's loan was modified. The principal amount of the loan was reduced to $171,812.00 with monthly payments of approximately $1,621.00 for 360 months. On September 16, 2016, U.S. Bank filed an amended proof of claim consistent with the loan modification.

10. On November 9, 2018, U.S. Bank filed a motion for relief from stay (ECF No. 73) due to [Simmons']

failure to pay his mortgage payments from July 2016 through October 2018-a total of twenty-eight payments. After giving credit for a suspense balance, U.S. Bank alleged that [Simmons] has a post-petition deficiency of $47,168.23.

11. At a hearing on December 6, 2018, a consent order granting U.S. Bank relief from stay was executed stating [Simmons] did not have evidence to offer in opposition to the motion for relief. The order granting relief from stay (ECF No. 77) was entered on December 28, 2018.

12. [Simmons'] budget throughout this case included funds for the monthly payments on his mortgage. [Simmons] has not provided an explanation of why he has not paid his mortgage and how the $47,168.23 set aside for payment of his mortgage was spent.

13. Until the filing of the motion for relief on November 9, 2018, the Trustee was unaware of [Simmons'] significant default under the terms of his modified mortgage and his Amended Plan.

14. [Simmons] is current in his plan payments and, as of this date, has approximately two months remaining in his case.

Dckt. No. 84, Joint Stipulation of Facts.

**CONCLUSIONS OF LAW**

"The goal of a Chapter 13 bankruptcy is to aggregate the debtor's outstanding debts, create a repayment plan for those debts, and prescribe the order, manner, and terms of repayment. The plan is proposed by the debtor, is subject to approval . . . and must ultimately be confirmed by the bankruptcy court under a specific set of criteria." In re Dukes, 909 F.3d 1306, 1316 (11th Cir. 2018).

Chapter 13 plans must contain certain provisions set forth in §1322(a)[2] and may contain other provisions set forth in §1322(b). See 11 U.S.C. §1322(a) and (b). Relevant to this analysis "the plan may provide for the curing of any defaults within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. §1322(b)(5). This is frequently referred to as the cure and maintenance provision for long-term debt which allows debtors to cure their pre-petition arrearages, while maintaining their ongoing post-petition obligations.

The Southern District of Georgia, like many districts, is a non-conduit[3] jurisdiction allowing debtors to pay their post-petition mortgage payments directly to the lender, rather than through the chapter 13 trustee. Among other things, this saves already cash strapped debtors the added expense of the chapter 13 trustee commission being applied to a debtor's monthly post-petition mortgage payments, often a debtor's most significant expense. Also, from a

---

[2] Unless otherwise noted, all code sections refer to Title 11 of the United States Code.

[3] In "conduit" districts, debtors include their mortgage payments in their monthly plan payments to the chapter 13 trustee. The trustee then acts as the disbursing agent to the lienholder.



AO 72A
(Rev. 8/82)

timing perspective, it allows cash strapped debtors some added flexibility in managing their finances.

If a debtor fails to make these direct payments, the creditor generally files a motion for relief. The post-petition delinquency is then addressed through a contested matter where relief from stay may be granted, with the secured creditor's bankruptcy claim being stricken (with a right to seek a post-foreclosure deficiency claim, if appropriate). Traditionally, debtors may have lost their home, but if they continued making their monthly plan payments to the Chapter 13 Trustee they could still expect to receive their discharge after making "all payments under the plan." 11 U.S.C. §1328(a). With the 2011 adoption of Rule 3002.1, courts have begun to reexamine whether "payments under the plan" include direct mortgage payments. 11 U.S.C. §1328(a); see also Fed. R. Bankr. P. 3002.1.

In the current case, paragraph 2(d) of Debtors' confirmed chapter 13 plans provides: "Debtor will make post-petition payments direct to [their secured home mortgage lender] according to the contract on the [ ] long-term debt." Smith, Dckt. No. 2, Simmons, Dckt. No. 27. In both cases, the claims were split: a pre-petition arrearage claim was included in Debtors' chapter 13 plan payments to

be disbursed by the Trustee, the cure portion.[4] The other portion of the claim, and the one at issue, was for ongoing post-petition mortgage payments, the maintenance portion. Debtors were to make these ongoing post-petition payments directly to the lenders. Both Debtors are current in their payments to the Trustee but have not made all their post-petition payments to their respective lenders.

**Material Default with Respect to a Term of Confirmed Plan.**

The Trustee argues direct post-petition mortgage payments are "payments under the plan" and Debtors' cases should be dismissed and Smith denied a discharge for their failure to make these payments. The Trustee contends Debtors' failure to make the direct payments constitutes a material default of the terms of the plans requiring dismissal under §1307(c)(6) which provides:

> Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court. . . may dismiss a case under this chapter . . . **for cause**, including -- **material default by the debtor with respect to a term of a confirmed plan**.

---

[4] Both Debtors failed to include their mortgage arrearage claims in their confirmed plans. However, the proofs of claim filed by the secured creditors were unobjected to and included the prepetition arrearage claims. See Smith, Proof of Claim No. 8 and Simmons, Proof of Claim No. 8. Unobjected to proofs of claim control and the arrears were ultimately paid by the Trustee. See Smith, Dckt. No. 2, Simmons, Dckt. No. 27 Chapter 13 Plan, ¶9("The amount, and secured or unsecured status, of claims disclosed in this plan are based upon the best estimate and belief of the Debtor(s). An allowed proof of claim will supersede those estimated claims.").

AO 72A
(Rev. 8/82)

11 U.S.C. §1307(c)(6)(emphasis added). The Trustee also argues, by diverting these funds for other purposes, Debtors have failed to contribute the entirety of their disposable income to their plans constituting a lack of good faith and "cause" to dismiss the cases. See 11 U.S.C. §1307(c).

Conversely, Debtors contend they have been in bankruptcy for 5 years,[5] made all their payments to the Trustee, and are entitled to a discharge under §1328(a) which states "as soon as practicable after completion by the debtor of **all payments under the plan** . . . the court **shall** grant the debtor a discharge of all debts provided for by the plan." 11 U.S.C. §1328(a)(emphasis added). Debtors have requested a hearing on the good faith issue.

"While the statutory term 'all payments under the plan' has been in place in [§]1328(a) since the Bankruptcy Code became effective in 1978, it had not previously been construed as a basis for dismissal without discharge where direct payments were in arrears" until the 2014 In re Heinzle, 511 B.R. 69 (Bankr. W.D. Tex. 2014) opinion. In re Gibson, 582 B.R. 15, 18 (Bankr. C.D. Ill. 2018). There is a split of authority in the published opinions considering the matter with

[5] See 11 U.S.C. §1322(d)(stating a plan may not be for a period that is longer than 5 years).

the current majority concluding that "payments under the plan" includes direct post-petition mortgage payments. See generally In re Kessler, 655 F. App'x 242 (5th Cir. July 8, 2016); In re Mrdutt, 600 B.R. 72 (B.A.P. 9th Cir. 2019); Evans v. Stackhouse, 564 B.R. 513 (E.D. Va. 2017); In re Finley, 2018 WL 4172599, at *2 (Bankr. S.D. Ill. Aug. 28, 2018); In re Coughlin, 568 B.R. 461 (Bankr. E.D.N.Y. 2017); In re Hanley, 575 B.R. 207 (Bankr. E.D.N.Y. 2017); In re Thornton, 572 B.R. 738 (Bankr. W.D. Mo. 2017); In re Dowey, 580 B.R. 168 (Bankr. D.S.C. 2017); In re Gonzalez, 532 B.R. 828 (Bankr. D. Colo. 2015); In re Doggett, 2015 WL 4099806, at *3 (Bankr. D. Colo. July 6, 2015); In re Formaneck, 534 B.R. 29 (Bankr. D. Colo. 2015); In re Ramos, 540 B.R. 580 (Bankr. N.D. Tex. 2015); In re Heinzle, 511 B.R. at 80 ("[R]egardless how a plan is written, post-petition mortgage payments are payments made pursuant to the plan and the failure to maintain such payments will result in dismissal, conversion, or denial of discharge."); See Michelle H. Bass, Fail to Make Direct Payments to Secured Creditors? No Discharge, 38 Am. Bankr. Inst. J., no. 5, May 2019, at 28; Elizabeth L. Gunn, With Notice Comes Responsibility Direct Payments to Creditors Are Payments "Under the Plan" and Require for Debtor to be Granted §1328(a) Discharge, 37 Am. Bankr. Inst. J., no. 5, May 2018, at 21.

AO 72A
(Rev. 8/82)

The minority position, and the one adopted by this Court, finds that post-petition mortgage payments paid directly by debtor are not "payments under the plan" and a debtor's failure to make such payments standing alone does not merit the dismissal of a debtor's bankruptcy case, the denial of their discharge, and most likely the loss of their home. See In re Gibson, 582 B.R. 15 (Bankr. C.D. Ill. 2018)(post-petition direct payments to mortgage lender were not "payments under the plan"); In re Rivera, 599 B.R. 335 (Bankr. D. Ariz. 2019)(same); 8 Collier On Bankruptcy ¶1328.01 (16th ed. 2018)("[P]ayments under the plan" refer to the payments debtor makes to the trustee."); see also Ken Siomos, Denying Chapter 13 Discharges for Direct-Payment Defaults, 38 Am. Bankr. Inst. J., no. 6, June 2019, at 24; Brett Weiss, Fail to Make Direct Payments to Secured Creditors? Discharge Ok, 38 Am. Bankr. Inst. J., no. 5, May 2019, at 29; David Cox, Don't Move the Goalposts Section 1328 Should Not Deny Discharge to Debtor Who Completes Payments to Trustee, But is Behind on Direct Payments, 37 Am. Bankr. Inst. J., no. 5, May 2018, at 20; see also In re Dukes, 909 F.3d at 1317-18 ("The Code gives debtors a choice to either repay such long-term debt 'inside' the plan -- with the trustee acting as disbursing agent -- or 'outside' the plan, with payments coming directly from the debtor, often under the terms of the original debt instruments."); In re Telfair, 216 F.3d 1333, 1340 (11th Cir.

2000)(post confirmation, a debtor's regular mortgage loan payments paid directly to the lender are made outside the plan and not protected by the automatic stay).

While the phrase "payments under the plan" is not expressly defined by the Bankruptcy Code, the phrase and concept are fundamental to chapter 13 and the fresh start. In the chapter 13 context, the Court finds the conclusion that "payments under the plan" means payments the debtor makes to the trustee is supported by the overall structure and concept of chapter 13 and consistent with the phrase's use elsewhere in the Code. For example, §1329 allows for modifications to be filed "[a]t any time after confirmation of the plan but before the completion of payments under such plan . . . ." 11 U.S.C. §1329(a)(emphasis added). Section 1329(a)'s use of "payments under such plan" has traditionally been understood to mean payments the debtor makes to the trustee. "Consistent with §1329's plain language, it is largely undisputed 'that a plan cannot be modified once all payments have been made.' . . . 'If a trustee could amend a Chapter 13 plan *after* the debtor completes his or her **payments to the trustee**, the mandatory nature of the discharge provision [11 U.S.C. §1328] would be eviscerated.'" In re Meza, 467 F.3d 874, 878 (5th Cir. 2006)(emphasis added)(italics and brackets in original)(internal citations omitted)(citing In re Moss, 91 B.R. 563,

AO 72A
(Rev. 8/82)

565 (Bankr. C.D. Cal. 1988) and In re Casper, 154 B.R. 243, 247 (N.D. Ill. 1993)); see also In re Sounakhene, 249 B.R. 801, 804 (S.D. Cal. 2000)("[A]lthough there is some disagreement, it has generally been held that a plan is 'complete' when the debtor makes all the payments to the trustee."). Chapter 13 bankruptcies may extend up to 5 years.[6] Debtors frequently have long-term debts such as home mortgages that extend well beyond the 5 year life span of a chapter 13. If "payments under the plan" include direct mortgage payments, modifications arguably could be filed well beyond the 5 year period allowed for chapter 13 plans. See 11 U.S.C. §1329 (a)(allowing modifications to be filed "[a]t any time after confirmation of the plan but before the completion of payments under such plan.").

Section 1325(b)(1)(B)'s language also supports the interpretation that "payments under the plan" means payments made from the debtor to the trustee. See 11 U.S.C. §1325(b)(1)(B)(requiring all of a debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan)(emphasis added).

---

[6] See 11 U.S.C. §1322(d).

AO 72A
(Rev. 8/82)

A review of the language of §326 also supports the conclusion. Section 326 sets forth the trustee's compensation and provides in part:

> In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon **all payments under the plan.**

11 U.S.C. §326(b)(emphasis added). One of the main reasons debtors opt to pay these mortgage loans directly is to avoid paying the trustee commission on most likely their largest monthly expense. If these direct payments are "payments under the plan" the trustee arguably would receive a commission on these direct payment disbursements.

Another example supporting the conclusion that "all payments under the plan" means payments from the debtor to the trustee is language of Federal Rule of Bankruptcy Procedure 3002.1 itself. Rule 3002.1(f) provides "[w]ithin 30 days after **the debtor completes all payments under the plan, the trustee shall file** and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim . . . ." Fed. R. Bankr. P. 3002.1(f)(emphasis added). Rule 3002.1(g) requires a two-part response from the

creditor. First, the creditor must indicate if the arrearage has been paid, the cure portion. See Fed R. Bankr. P. 3002.1(g). Second, the creditor must state whether the debtor is current on all payments consistent with §1322(b)(5), the maintenance portion. Id. This language contemplates there may be a delinquency at the end of the bankruptcy and requires an accurate accounting from the lender. Furthermore, under the majority approach, the provisions of Rule 3002.1(f) would never be triggered in the event of a post-petition direct payment delinquency because all the payments "under the plan" prong would never be satisfied.

The only enforcement provision of Rule 3002.1 is directed at non-compliant creditors. See Fed. R. Bankr. P. 3002.1(i)(providing evidentiary consequences for a creditor's failure to comply with Rule 3002.1). Rule 3002.1 was designed to shield debtors from unanticipated financial surprises at the end of their bankruptcies, not as a sword to thwart them from receiving a discharge. Rivera, 599 B.R. at 344.

In 2005, as part of the Bankruptcy Consumer Protection and Abuse Act, Congress specifically added some additional hurdles for debtors to satisfy at the end of their bankruptcy cases in order to obtain their discharge. Specifically, before a discharge may be entered, debtors must now certify that all domestic support obligation

payments are current. See 11 U.S.C. §1328(a). Congress did not require a certification regarding direct loan payments. The statutory consequence for failing to be current in domestic support obligations is no discharge. Id. The proper statutory consequence of failing to make all direct post-petition mortgage payments is potentially the loss of your home, not the denial of a discharge. See 11 U.S.C. §1328(a). Congress's addition of the domestic support obligation certification highlights the distinction.

Finally, §1328 uses both "payments under the plan" and "provided for by the plan," and the phrases arguably have separate meanings. See Gibson, 582 B.R. at 19 ("allowing for the possibility that not all creditors holding debts provided for by the plan are receiving payments under the plan. There may be some payments made to creditors who are provided for by the plan that are not payments under the plan.").

While not addressing this exact issue, the Court finds support in the Eleventh Circuit's conclusion in In re Dukes that post-petition mortgage debts paid by debtor directly to the creditor are debts that are not handled through a debtor's bankruptcy plan, but rather, are paid "outside the plan." Dukes, 909 F.3d 1396 (11th Cir. 2018). Dukes did not have an arrearage claim but considered whether a long-term debt was discharged when a debtor made their plan payments

AO 72A
(Rev. 8/82)

to the chapter 13 trustee and received their discharge, but failed to make direct post-petition mortgage payments to the creditor. The Eleventh Circuit stated "[t]he plan's terms must, in some way, affect or govern the debt's repayment. By stating only that [the debtor] would make any payments to the [the creditor] directly, [the debtor] chose not to handle the [creditor's] debt through her bankruptcy." Dukes, 909 F.3d at 1313-14. In reaching its conclusion, the Eleventh Circuit examined the Supreme Court's interpretation of "provided for" in the context of in §1325(a)(5) in Rake v. Wade, 508 U.S. 464, 474 (1993). In Rake the Supreme Court found post-petition mortgage debts paid directly by debtors "were simply 'maintained' according to the terms of the mortgage documents during the pendency of [debtors' bankruptcy cases], each plan treated the arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plans." Rake, 508 U.S. at 473; see also 11 U.S.C. §1322(b)(5)(allowing cure and maintenance of long-term debts in the plan).

Following the Supreme Court's interpretation of "provided for" as meaning "make a provision for" or "stipulate to" the Eleventh Circuit concluded the debt was not discharged because the debtor's "plan neither made provisions for, nor stipulated to anything regarding the [creditor's] mortgage" when they proposed to pay the

debt directly. Dukes, 909 F.3d at 1314. Therefore, the Eleventh Circuit concluded such long-term debt was not "provided for by [the debtor's bankruptcy] plan," was not subject to discharge, and continued to be "governed by the preexisting contractual terms, not by any provisions of the plan." Dukes, 909 F.3d at 1317; see also 11 U.S.C. §1322(b)(2).[7]

This issue of denying discharge for failure to make post-petition mortgage payments appears to have arisen after the 2011 adoption of Federal Rule of Bankruptcy Procedure Rule 3002.1 which ironically was adopted as a consumer protection measure to afford debtors an opportunity to determine their remaining outstanding mortgage obligations at the end of their bankruptcies. See In re Tollios, 491 B.R. 886, 888 (Bankr. N.D. Ill. 2013)("Rule 3002.1 was adopted . . . to address a significant problem caused when mortgage companies applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving notice to the debtor and then, based on these post-petition defaults, sought to foreclose upon the debtor's property after the debtor completed the plan."). Debtors had difficulty keeping up with changes in monthly payments and often

[7] The Eleventh Circuit also held that even if the mortgage was "provided for by the plan" the discharge of the mortgage would violate §1322(b)(2) by modifying the creditor's rights under the original loan documents to obtain a deficiency judgment against the debtor. See Dukes, 909 F.3d at 1313.

AO 72A
(Rev. 8/82)

emerged from bankruptcy with no idea of their outstanding mortgage debt. Many lenders were hesitant to communicate with debtors in bankruptcy for fear of violating the §362 automatic stay. Mortgage lienholders and servicers often had changed multiple times and debtors had difficulty obtaining accurate payment information. At the end of a 3-5 year bankruptcy case, this frequently left debtors owing significantly more than they anticipated and at risk of losing their homes. Rule 3002.1 is a "procedural mechanism designed to effectuate the chapter 13 policy of providing debtors with a 'fresh start.'" In re Rivera 599 B.R. at 342 (citing In re Thongta, 480 B.R. 317, 319 (Bankr. E.D. Wis. 2012)).

Before adoption of the Rule, unless a motion for relief was filed by the lender, the Trustee and other third parties often would be unaware if debtors failed to make these direct payments. See Smith, Dckt. No. 76, Tr.'s Notice of Completion of Plan Payments and Notice of Final Cure Payments ("If your claim was paid directly by the debtor . . . the Trustee does not have any information regarding whether this obligation is current."). One judge noted "[t]his [c]ourt, in seventeen years on the bench, has never dismissed a chapter 13 case without discharge, where the required payments to the trustee were completed, for the reason that the debtor failed to make all of the direct mortgage payments." In re Gibson, 582 B.R. at 18; In re

Rivera, 599 B.R. at 343 ("As noted by Gibson, it 'is safe to say that from 1978 until very recently, countless Chapter 13 debtors received a discharge despite an uncured default in payments to a creditor made direct by the debtor, either because the trustee was unaware of the default or because a default on direct plan payments was not viewed as a basis to seek dismissal without discharge.'").

One of the tenets of statutory construction is that a statute is not to be read as eroding past practices absent a clear indication from Congress. Hamilton v. Lanning, 560 U.S. 505, 517, 130 S. Ct. 2464, 2473, 177 L. Ed. 2d 23 (2010)("We 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'")(quoting Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 454, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)). Furthermore, a procedural rule, such as Rule 3002.1, cannot override terms of the Bankruptcy Code. 28 U.S.C. §2075 ("Such rules shall not abridge, enlarge, or modify any substantive right.").

If Rule 3002.1 is interpreted as a directive to chapter 13 trustees to identify post-petition defaults, motions for relief by mortgage lenders could always draw motions to dismiss from the trustee. Furthermore, Rule 3002.1 does not address other direct payments made by debtors where delinquencies would continue to go



AO 72A
(Rev. 8/82)

undiscovered. Such a disparity in treatment and harsh consequences are improper.

Furthermore, if such direct payments are included in the payments under the plan, debtors could make all their payments to the trustee for five years, with unsecured creditors receiving their confirmed dividend, and debtors could lose the benefit of a chapter 13 discharge as well as their homes.[8] It is not uncommon for a debtor to seek and struggle to obtain a loan modification. This process often involves a six month or longer trial period. Debtors undertaking and failing in such a process could face losing their homes, having their case dismissed and/or their discharge denied. This is not what the Bankruptcy Code contemplates or mandates. Creditors have received the benefit of their bargain made with the confirmed plan and the Bankruptcy Code. The anticipated and agreed upon dividend has been paid. The mortgage debt is nondischargeable and the lender has access to its collateral and is free to pursue its remaining state and federal law remedies.

---

[8] In fact, Simmons has already lost his home after a motion for relief. In Simmons, the mortgage lender filed a motion for relief from stay. Simmons, Dckt. No. 73. The motion was later granted with no opposition from Simmons. Simmons, Dckt. No. 77.

AO 72A
(Rev. 8/82)

A final point is noting that in chapter 13, revocation of a discharge requires bad conduct such as fraud. See 11 U.S.C. §1328(e). There is no chapter 13 basis for denial of a debtor's overall discharge for merely defaulting on a post-petition direct mortgage payment. See 11 U.S.C. §1328; cf. 11 U.S.C. §727 (bad conduct of debtors that would result in denial of a discharge under chapter 7).

For these reasons, the Court concludes direct post-petition mortgage payments are debts paid outside of the bankruptcy and a debtor's failure to make all of these payments, standing alone does not constitute a material default with respect to a term of a plan under §1307(c)(6) and is not per se grounds for a denial of discharge.

**Lack of Good Faith.**

The Trustee also argues Debtors' cases should be dismissed for lack of good faith because Debtors have not made their ongoing mortgage payments as Paragraph 2(d) of their plans required. The Trustee argues Debtors' budgets accounted for these mortgage payments, and if these funds were not used to pay the mortgage payment, the funds should have gone to Debtors' creditors. Debtors requested an opportunity to be heard on their respective expenditures of these funds and the Clerk is directed to set a hearing on this issue.

AO 72A
(Rev. 8/82)

For these reasons, it is ORDERED that the Trustee's Motions to Dismiss for material default with respect to a term of a confirmed plan under §1307 and the Motion to Deny Discharge are denied. The Clerk of Court is directed to specially set a hearing on the Trustee's Motions to Dismiss for lack of good faith.

**[END OF DOCUMENT]**